# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 3, 2026

Lyle W. Cayce
Clerk

No. 25-30556

BRANDON HOLLOWAY,

*Plaintiff—Appellant*,

*versus*

PROCTER & GAMBLE MANUFACTURING COMPANY,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:23-CV-1725

_____

Before ELROD, *Chief Judge*, and HO and RAMIREZ, *Circuit Judges*.
PER CURIAM:

Brandon Holloway sued Procter & Gamble Manufacturing Company ("P&G") after he was terminated from his employment with the company. Holloway alleges his termination was unlawful, bringing a claim for racial discrimination, retaliation, and a violation of a Louisiana whistleblower statute. The district court granted summary judgment in favor of P&G on all three claims. We affirm.

No. 25-30556

## I.

Brandon Holloway began working for P&G in 2007. Holloway's role required him to coordinate with sub-vendors, supervise the loading of non-hazardous waste, and confirm the transport and removal of such loads through the completion of waste manifest forms. P&G used these waste manifest forms to monitor waste and provide accurate billing statements for vendors.

In November 2020, two years before his termination, Holloway violated P&G's Sourcing, Accountability, Fairness, and Ethics ("SAFE") procurement policies by directly contacting suppliers for loading and transportation quotes, bypassing P&G's procurement department. In response, P&G issued "the least severe disciplinary action that can be levied."

P&G later conducted an internal audit and discovered errors in Holloway's waste manifest forms that affected the validity of vendor invoices. P&G reassigned Holloway from his position and transferred the responsibility for ensuring the manifests were complete and accurate to another team member. Holloway insisted on continuing to sign the manifests, as he believed that the law required him to do so. Holloway claims that he informed Will Morgan, P&G's Health, Safety, and Environment Manager, that P&G's manifest signing practices violated certain federal and state regulations. Holloway further claims that he submitted a complaint of racial discrimination to Morgan, alleging that he was being treated differently than his similarly situated non-white counterparts. Morgan denies that Holloway ever told him about either of these issues.

In August 2022, P&G discovered that Holloway used his corporate credit card for personal expenses, spending roughly $100 on gas for his

personal use and $115 on a dinner for himself. The next month, Holloway acknowledged that he violated company policy in an HR meeting.

In November 2022, another internal audit found that a sub-vendor had been overbilling the company. The report found that Holloway failed to review sub-vendor timesheets for accuracy. The report also recommended further disciplinary action for reaching out directly to suppliers a month prior, the same SAFE procurement policy violation Holloway was disciplined for in November 2020.

P&G terminated Holloway's employment on December 6, 2022, citing the SAFE procurement policy violations and misuse of the company credit card. That same day, Holloway submitted a complaint to the P&G employee hotline, claiming that he was under the impression that he would only face corrective action for the credit card purchases, not termination. P&G investigated this complaint and found it to be unsubstantiated.

Holloway then filed suit, alleging P&G fired him in retaliation for his complaints to Morgan regarding the alleged violations of federal and state regulations and his claim of racial discrimination. P&G moved for summary judgment. The district court granted summary judgment, finding that Holloway had failed to rebut P&G's legitimate reason to fire him and had failed to show a violation of law as a prerequisite for his whistleblower claim. Holloway appealed.

## II.

We review a district court's summary judgment order de novo. *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 381 (5th Cir. 2017). Summary judgment is proper when there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue is material if its resolution could affect the outcome of the action." *Sierra*

*Club, Inc. v. Sandy Creek Energy Assocs.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001)). Further, when deciding whether a material dispute of fact exists, we view the facts and inferences in the light most favorable to the non-moving party. *Id.*

Holloway appeals the district court's order granting summary judgment on his racial discrimination claim, retaliation claim, and state whistleblower claim.

## III.

First, Holloway appeals the district court's grant of summary judgment on his racial discrimination claim. A plaintiff "may prove a claim of intentional discrimination . . . either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). When a plaintiff offers no direct evidence of intentional race discrimination, his claim is analyzed under the burden shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of racial discrimination. *Id.* at 802. If the plaintiff succeeds, then the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Id.* Upon such a showing, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the defendant's reason is pretextual. *Id.* at 804–05.

The district court found that Holloway had established a *prima facie* case to infer discrimination. It further found that P&G had shown that it fired Holloway for a legitimate, nondiscriminatory reason. Finally, the district court concluded that Holloway had failed to show that P&G's reason was pretextual.

On appeal, Holloway challenges the use of the *McDonnell Douglas* test and the court's finding that he failed to show that P&G's reason for firing him was pretextual.

## A. *McDonnell Douglas* Test

Holloway invites this court to abandon the *McDonnell Douglas* test. For this proposition, Holloway only points to a concurrence written by Justice Thomas that argues that the Supreme Court should reconsider the *McDonnell Douglas* framework in a future case. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 314 (2025) (Thomas, J., concurring). Holloway also argues that we may abandon the *McDonnell Douglas* test because no Supreme Court case requires its usage. *See id.* at 326. However convincing this call may be, this court remains bound by the rule of orderliness. *See Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). We thus find no error in the district court's use of the *McDonnell Douglas* test.

## B. Pretext

Holloway next argues that the district court erred when it found that he failed to establish that P&G's reason for firing him was pretextual. Holloway claims his deposition testimony was sufficient to create a genuine dispute of material fact as to whether P&G's reason for firing him was pretextual.

Holloway fails to present evidence of discrimination. Holloway only points to his own deposition testimony that his coworkers of a different race were not punished as he believed he would have been. But Holloway admits in his deposition testimony that he does not "have a black and white evidence fact that [his coworkers] were treated better than [him]." He states that "[e]verything I have is based off of how I feel and off of how other people feel." Holloway conducted no discovery on this point.

No. 25-30556

Holloway also fails to discredit P&G's proffered legitimate reason for terminating him. P&G provided documentation showing Holloway violated company credit card policy and SAFE procurement policy. Holloway admits to the credit card violation. His only response is that his second SAFE procurement violation did not actually violate P&G's policies.[1] But his alternative interpretation of P&G's policies is insufficient to demonstrate that P&G's reason for firing him was pretextual. We therefore affirm the district court's grant of summary judgment on Holloway's racial discrimination claim.

## IV.

Next, Holloway appeals the district court's grant of summary judgment on his retaliation claim. Title VII of the Civil Rights Act makes it unlawful for an employer to retaliate against an employee who "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation, Holloway must show that "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (quoting *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017)). Just as in the racial discrimination issue, upon a *prima facie* showing the burden shifts to the defendant to show a legitimate, non-retaliatory reason for the adverse employment action. *Id.* at 232. If the

---

[1] Holloway also argues that P&G's documentation is "hearsay" and "was not properly authenticated." However, as Holloway raises these evidentiary arguments for the first time on appeal, these arguments are forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397–98 (5th Cir. 2021).

defendant makes that showing, the burden will then shift to the plaintiff to show pretext. *McDonnell Douglas*, 411 U.S. at 804–05. Unlike the racial discrimination issue, however, the plaintiff in a retaliation claim must establish that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013).

The district court found that Holloway had established a *prima facie* case of retaliation. And the court found that P&G had shown a legitimate, non-retaliatory reason for firing Holloway. The court then held that Holloway had failed to prove P&G's reason for terminating him was pretextual. Holloway again challenges the court's holding regarding pretext.

To succeed on his retaliation claim, Holloway must show "significant record evidence" aside from temporal proximity between the protected conduct and the adverse action. *Shahrashoob v. Texas A&M University*, 125 F.4th 641, 654 (5th Cir. 2025) ("[A] plaintiff fails to establish pretext when there is not significant record evidence beyond temporal proximity."). Here, Holloway rests his argument primarily on the temporal proximity between his alleged complaints to Morgan about racial discrimination and his termination. He also asserts that P&G previously told him that his credit card policy violation in August 2022 did not warrant termination. So, because he was terminated after his complaints of racial discrimination, he argues that the escalation of discipline after his protected activity would allow a jury to conclude that P&G's stated reasons were pretextual. *See Watkins v. Tregre*, 997 F.3d 275, 284–85 (5th Cir. 2021).

But Holloway's theory is confounded by his second violation of P&G's SAFE procurement policies, discovered shortly before his termination. The internal audit that led P&G to discover Holloway's second violation occurred in November 2022, the same time as his alleged

complaints to Morgan and just a few weeks before his termination. Enforcing company policy is a legitimate, non-retaliatory reason to terminate Holloway. Holloway's claim that P&G did not seek to terminate his employment before his complaints to Morgan does not constitute "significant record evidence," especially considering his interim violations of company policy. *Shahrashoob*, 125 F.4th at 654. We thus affirm the district court's summary judgment finding on the retaliation claim.

## V.

Finally, Holloway appeals the district court's grant of summary judgment on his state whistleblower claim. Louisiana's whistleblower statute, La. R.S. 23:967(a), "'provides protection to employees against reprisal from employers for reporting or refusing to participate in illegal work practices.'" *Clark v. City of Alexandria*, 116 F.4th 472, 485 (5th Cir. 2024) (quoting *Hale v. Touro Infirmary*, 886 So.2d 1210, 1214 (La. App. 4th Cir. 2004)). To succeed on such a claim, the plaintiff must first establish that his employer "violated the law through a prohibited workplace act or practice." *Id.* The district court held that Holloway failed to prove an actual violation of state law. *See Accardo v. La. Health Servs. & Indem. Co.*, 943 So.2d 381, 383–84 (La. App. 1st Cir. 2006).

Holloway alleges that P&G asked him to falsify government documents in violation of state law. Specifically, Holloway testified that P&G wanted him to "load hazardous waste and let someone else do the paperwork that . . . had no clue what it was." According to Holloway, if the person who signed the paperwork did not see or do the loading of the hazardous waste, that would be "falsifying company or government documents."

Holloway points to a federal regulation and two statutes to prove that another person signing these transportation documents is a violation of the

law. First, 49 C.F.R. § 172, Subpart H concerns the "requirements for training hazmat employees." Second, La. R.S. 14:133 prohibits the filing of "false public records." And third, La. R.S. 38:3082 prohibits the falsification of documents to evade regulations. But as the district court noted, none of these laws prove that another P&G worker signing the transportation paperwork makes that paperwork a false public record or document. Holloway has not introduced any evidence that would allow a trier of fact to determine that these forms would be false if signed by someone else. We therefore affirm the district court's grant of summary judgment on Holloway's state whistleblower claim.

* * *

Holloway fails to show any error in the district court's grant of summary judgment. P&G demonstrated a legitimate reason to fire Holloway that was not discriminatory nor retaliatory: internal audits discovered that he repeatedly violated company policy. Holloway failed to carry his burden to show that P&G's stated reason was pretextual. And Holloway failed to show an actual violation of state law under his state whistleblower claim. We affirm.

JAMES C. HO, *Circuit Judge*, joined by ELROD, *Chief Judge*, concurring:

*McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), has long been the governing standard for how a plaintiff must establish a prima facie case of discrimination under Title VII of the 1964 Civil Rights Act. It's also among the Supreme Court's most frequently cited cases. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 351 (5th Cir. 2019) (Costa, J., concurring) ("More than 57,000 court opinions have cited it.").

But it's wrong. And in more ways than one.

To begin with, *McDonnell Douglas* asks if the plaintiff "belongs to a racial minority." *Id.* at 802. That suggests that Title VII does not apply to white plaintiffs. As I've previously noted, various circuits have treated white plaintiffs worse than non-white plaintiffs based on *McDonnell Douglas*. *See B.W. v. Austin Indep. Sch. Dist.*, 121 F.4th 1066, 1083 n.2 (5th Cir. 2024) (Ho, J., dissenting) (collecting examples).

The Supreme Court has since fixed that defect in *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025). *See, e.g.*, *id.* at 309 ("Title VII's disparate-treatment provision draws no distinctions between majority-group plaintiffs and minority-group plaintiffs.").

But Justice Thomas has identified other ways that *McDonnell Douglas* departs from the text of Title VII. *See id.* at 320 (Thomas, J., concurring) ("The *McDonnell Douglas* framework was made out of whole cloth. Its contours have no basis in the text of Title VII or any other source of law.") (quotations and citations omitted).

*McDonnell Douglas* was originally designed for courts to use in bench trials. But the framework has since been employed in the summary judgment context, despite the fact that the Court has never held that *McDonnell*

*Douglas* is appropriate for use at summary judgment. *See id.* at 320–21 (quotations omitted).

That's troubling, because *McDonnell Douglas* is hard to square with Rule 56 of the Federal Rules of Civil Procedure. "Rule 56(a) requires a court to grant summary judgment when the movant establishes that there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 322 (quoting FED. R. CIV. P. 56(a)). So Rule 56 only requires the plaintiff to present sufficient evidence to create a genuine dispute as to any material fact. *McDonnell Douglas*, by contrast, requires the plaintiff to prove a prima facie case of discrimination by a preponderance of the evidence. *See, e.g.*, *Texas Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981). As a result, *McDonnell Douglas* "requires a plaintiff to prove too much at summary judgment." *Ames*, 605 U.S. at 323 (Thomas, J., concurring). *See also, e.g.*, *Awe v. Harris Health Sys.*, 163 F.4th 969, 976 (5th Cir. 2026) (Elrod, C.J., concurring) (same).

That's not all. *McDonnell Douglas* also requires a plaintiff to prove that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. But once again, "[t]hat requirement demands more than the text of Title VII." *Ames*, 605 U.S. at 323 (Thomas, J., concurring). Under Title VII, "a plaintiff need not establish that the employer's stated reason for its action was *wholly* pretextual. A plaintiff could prevail even if the employer's stated reason was *part* of the reason for the employer's action." *Ames*, 605 U.S. at 323–24 (Thomas, J., concurring) (emphasis in original). *See also* 42 U.S.C. § 2000e–2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a *motivating factor* for any employment practice, *even though other factors also motivated the practice*.") (emphasis added).

No Supreme Court precedent requires us to use *McDonnell Douglas*, rather than the plain text of Rule 56 and Title VII.  So "lower courts are free to proceed without the *McDonnell Douglas* framework."  *Ames*, 605 U.S. at 326 (Thomas, J., concurring).

Accordingly, in an appropriate case, I would welcome the opportunity to revisit our precedent to better align the law of our circuit with the plain text of Title VII and Rule 56.  *See generally Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506–07 (5th Cir. 2023) (Ho., J., concurring).